UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.I.,<br><br>   Petitioner,<br><br>  v.<br><br>MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States,<br><br>   Respondents. | No. 1:25-cv-01637-KES-SKO (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 2 |

  This habeas action concerns the re-detention of petitioner R.I., a noncitizen who was initially detained and then released in 2022 by immigration authorities, but who was recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 2. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

---

[1] The Court granted petitioner's motion to proceed via pseudonym by separate order.

1

## I.   Background[2]

Petitioner states that he fled Russia because he faced persecution due to his race. Doc. 1 at ¶ 24. On June 8, 2021, petitioner arrived in the United States and presented himself at the San Ysidro, California port of entry to seek asylum. *Id.* Immigration officials detained petitioner for four days. *Id.* Petitioner expressed an intent to seek asylum, and immigration officials served him with a notice to appear in immigration court and placed him in removal proceedings under 8 U.S.C. § 1229a so that he could pursue his asylum claim. *Id.*; *see* Doc. 1-3 at 4; Doc. 9-1, Jerome Decl. at ¶ 5. They released petitioner on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 1-3 at 2–3; Doc. 9-1, Jerome Decl. at ¶ 5. Petitioner was given a notice of release which stated: "You have been released from service custody pending a final decision in your exclusion/deportation hearing." Doc. 1-3 at 2–3. Immigration officials also enrolled petitioner in the "Alternatives to Detention" program. Doc. 9-1, Jerome Decl. at ¶ 5.

By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)). Such release therefore reflects a determination that the noncitizen is not a danger to the community or a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Immigration officials released petitioner on an ankle monitor and instructed him to report to the ICE office in San Francisco, California. Doc. 1-2, R.I. Decl. at ¶ 4. Petitioner followed immigration officials' instructions, and ICE agents installed an application on his phone and told him that he would be required to report for check-ins on the phone application by taking a photo of himself and verifying his location. *Id.*

Petitioner thereafter lived with his wife and children in California. Doc. 1-2, R.I. Decl. at ¶ 6. After petitioner was granted work authorization, he worked in construction to provide for his

---

[2] The facts articulated in this section come from petitioner's verified petition and other evidence in the record. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

1  family. *Id.* ¶¶ 6–7.  One of his children has autism and requires special care.  *Id.*  Petitioner's

2  wife is currently pregnant.  *Id.*; Doc. 1-6, Ex. 4.

3        Respondents do not dispute that petitioner maintained a clean criminal record, appeared

4  for all in-person check-ins, and kept ICE updated on his address.  Doc. 1-2, R.I. Decl. at ¶¶ 4–7;

5  *see* Doc. 9.  But respondents assert that petitioner checked in outside of an approved zone on

6  seven occasions and missed four virtual check-ins on the phone application.  Doc. 9-1, Jerome

7  Decl. at ¶¶ 7–17.  Petitioner maintains that he asked his assigned ICE officer if he could upload

8  the pictures at work, rather than at home, and the ICE officer told him that was okay.  Doc. 1-2,

9  R.I. Decl. at ¶ 4.  He also maintains that he never missed a check-in on the phone application, but

10  that on several occasions, he had trouble uploading the required image.  *Id.*  Petitioner represents

11  that he never received any formal warning, threat of arrest, or notice of non-compliance in

12  relation to the alleged violations.  *Id.* ¶ 5.  Respondents state that the date of his last alleged

13  violation was August 28, 2025.  Doc. 9-1, Jerome Decl. at ¶ 18.

14        In late October 2025, ICE agents came to petitioner's home and informed him that he had

15  missed a call from them.  Doc. 1-2, R.I. Decl. at ¶ 8.  Petitioner explained that he did not answer

16  because the call came from an unknown number, and the agents left.  *Id.*  On October 31, 2025,

17  an ICE agent instructed petitioner to appear at the San Francisco ICE office on November 3,

18  2025.  *Id.*  When petitioner reported to the ICE office as instructed, ICE agents arrested him.  *Id.*;

19  *see* Doc. 9-1, Jerome Decl. at ¶ 18.  Petitioner was then transported to Mesa Verde ICE

20  Processing Center, where he remains detained.  Doc. 1-2, R.I. Decl. at ¶ 9.

21        Petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary

22  restraining order, Doc. 2.  He argues in both of those filings that that the Due Process Clause

23  required that he be provided a hearing prior to his re-detention.  *See* Docs. 1, 2.  Respondents

24  filed an opposition to the motion, and they request that the opposition also serve as their response

25  to the petition for writ of habeas corpus.[3]  Doc. 9 at 1, n.2.  Petitioner filed a reply on December

---

[3] In their opposition, respondents request that the Court "strike and [] dismiss all unlawfully named officials under § 2241." Doc. 9 at 1, n.1. Such a "request for court order must be made by motion." *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025). "[A] request for affirmative relief is not proper when raised for the first time in an

3

6, 2025.  Doc. 10.

## II. Conversion to a Motion for Preliminary Injunction

The Court directed the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 7.  Neither party objected to converting the motion or requested a hearing.  *See* Docs. 9, 10.  Given that the standard for issuing a temporary restraining order and preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, *see* Doc. 7, petitioner's motion is converted to a motion for preliminary injunction.

## III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

///

---

opposition."  *Id.*  Respondents' request is therefore denied without prejudice.

4

## IV. Discussion

### a. Likelihood of Success on the Merits

Petitioner argues that, because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023), the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 2 at 11–23. In response, respondents argue that petitioner has no due process rights because he is subject to the "entry fiction" doctrine. Doc. 9 at 6–11.

The Supreme Court has noted the distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). But those at the threshold of initial entry typically have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

The "entry fiction" doctrine extends this distinction "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen an alien arrives at a port of entry—[such as] an international airport—the alien is on U. S. soil, but the alien is not considered to have entered the country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). The entry fiction limits a noncitizen in such circumstances to "only those rights *regarding admission* that Congress has provided by statute."

5

*Id.* at 140 (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention).

Respondents argue that *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc), *superseded by statute as stated in Xi*, 298 F.3d at 837–38, precludes petitioner's challenge to his immigration detention. In *Barrera-Echavarria*, the petitioner was a Cuban national who was detained at a port of entry. *Id.* at 1143–44. After the petitioner was ordered excluded, he was paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) as he could not be deported to Cuba, but he was subsequently re-detained after he committed various crimes while on parole. *Id.* at 1443–44. The Ninth Circuit found that the former 8 U.S.C. § 1226(e), which has since been repealed, statutorily authorized the indefinite detention of a noncitizen who had been ordered excluded but whose deportation could not be effectuated. *Id.* at 1444–48 (citing 8 U.S.C. § 1226(e) (repealed 1996)). The petitioner argued that "his detention in federal prisons almost continuously since 1985 [fell] on the punishment side of the line and violate[d] his [substantive] right to due process." *Id.* at 1448. The Court rejected that claim, finding that "[b]ecause excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Id.* at 1450.

Respondents argue that the entry fiction also applies to petitioner and that *Barrera-Echavarria* forecloses his due process claim for release from detention. But as the Ninth Circuit noted in *Xi*, "the statute interpreted in *Barrera-Echavarria* no longer exists," and subsequent amendments to the immigration laws "introduced an entire set of legal concepts purporting to redefine the 'basic territorial distinction' at play in immigration law." *Xi*, 298 F.3d at 838 (quoting *Zadvydas*, 533 U.S. at 694). *Barrera-Echavarria* considered the Attorney General's statutory authority "to detain undeportable, excludable aliens." *Barrera-Echavarria*, 44 F.3d at

///

///

///

6

1444.  But "'excludable' is no longer a term that has any statutory import under the INA." *Xi*, 298 F.3d at 838.[4]

The Ninth Circuit has also noted that the entry fiction doctrine applies primarily to procedural rights with respect to admission:  "The entry fiction [] appears determinative of the *procedural* rights of aliens with respect to their applications for admission." *Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004) (emphasis in original), *overruled in part on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007).  But it does not preclude all substantive constitutional protection for non-admitted aliens present in the country:

> [T]he entry fiction does not preclude substantive constitutional protection . . . for aliens paroled into the country after having been stopped at the border. . . . [T]he entry doctrine does not categorically exclude non-admitted aliens from all constitutional coverage . . . . Recognizing such a logical endpoint to the entry fiction prevents its application from becoming an exercise inconsistent with our basic constitutional values.  It also vitiates the perverse incentive that would otherwise exist for aliens to evade immigration checkpoints altogether and thereby acquire constitutional protections.  The entry fiction is best seen, instead, as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away.  Otherwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain "persons" as non-persons.

*Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), *overruled in part on other grounds by Wilkie v. Robbins*, 551 U.S 537 (2007).

The Court agrees with the other district court decisions in this circuit that have found that a noncitizen like petitioner, who was paroled into the United States and is subject to 8 U.S.C. § 1225(b)(2), has a due process right to challenge his re-detention without a bond hearing.  *See, e.g.*, *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251

---

[4] In *Zadvydas v. Davis*, the Supreme Court, noting the "serious constitutional problem" that would be presented if a statute permitted "indefinite detention of an alien[,]" employed the constitutional avoidance canon in holding that 8 U.S.C. § 1231(a)(6) "limits an alien's post-removal-period detention" to a reasonable period and "does not permit indefinite detention." *Zadvydas v. Davis,* 533 U.S. 678, 689–90 (2001).  In *Xi*, the Ninth Circuit found that this interpretation of § 1231(a)(6) also applied to inadmissible aliens.  *Xi*, 298 F.3d at 836–39.

7

(W.D. Wash. Nov. 3, 2025*)*; *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrera-Echavarria* inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings). In a due process challenge to the prolonged detention of a § 1225(b) detainee, the United States District Court for the Southern District of California rejected the argument that *Barrera-Echavarria* and the entry fiction foreclosed the due process claim. *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 770 (S.D. Cal. 2020); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8 U.S.C. § 1225(b)).

The Court finds that petitioner has a due process right to challenge his re-detention pending his removal proceedings. Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### i. Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

8

conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's parole from detention is similar. For nearly three and a half years, it allowed him to establish ties in the community while pursuing relief in his removal proceedings. He received employment authorization, was gainfully employed, and supported his family. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

///

///

### ii. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[5]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly three and a half years, and he established ties in the community, gained lawful employment, and supported his family. His detention denies him that freedom.

Respondents argue that petitioner's interest is low because, under § 1225(b)(2), his detention is mandatory. But immigration officials have discretion to parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A), *see Biden v. Texas*, 597 U.S. 785, 806 (2022), and they previously exercised that discretion to release petitioner on parole. Respondents' argument does not account for "why they found Petitioner to be eligible for parole" previously, but not now, even though he

---

[5] Respondents note that the Supreme Court has not utilized the *Mathews* factors in evaluating a Due Process claim by a noncitizen, Doc. 9 at 11 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)), but respondents analyze the *Mathews* factors without proposing an alternative test. Courts in this circuit regularly employ the *Mathews* factors to evaluate the Due Process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). The Court does not see a reason to depart from this practice. As the Ninth Circuit has noted, "*Mathews* remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz*, 53 F.4th at 1206–07.

1  has established "deep ties to the community, maintained employment, . . . and timely filed an
2  asylum application." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL
3  2637663, at *3 (W.D. Wash. Sept. 12, 2025).
4        Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the
5  petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No.
6  1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil
7  immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a
8  noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;
9  *Padilla*, 704 F. Supp. 3d at 1172. Respondents concede that petitioner is not a danger or a flight
10 risk. Doc. 9 at 12 ("Even if Petitioner specifically does not appear to be a danger or flight risk,
11 the Government has a strong interest in effectuating the system Congress devised." (internal
12 quotation marks omitted)). Given this concession, the risk of erroneous deprivation is significant.
13       Third, although the government has a strong interest in enforcing the immigration laws,
14 the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*,
15 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025
16 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that
17 "the State has an *overwhelming interest* in being able to return the individual to imprisonment
18 without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in
19 revoking parole without some informal procedural guarantees."). In immigration court, custody
20 hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the
21 government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward
22 doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.
23       On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where
24 the government must prove that he is a flight risk or danger to the community by clear and
25 convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) ("Because it is
26 improper to ask the individual to 'share equally with society the risk of error when the possible
27 injury to the individual'—deprivation of liberty—is so significant, a clear and convincing
28 evidence standard of proof provides the appropriate level of procedural protection [for bond

1  hearings for § 1226(c) detainees.]"), *abrogated on other grounds by Jennings v. Rodriguez*, 583
2  U.S. 281 (2018); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (extending *Singh*'s
3  burden of proof requirements to hearings for § 1225(b) detainees), *abrogated on other grounds by*
4  *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189,
5  1199 (9th Cir. 2022) (explaining that *Singh*'s burden of proof requirement was based on general
6  principles of due process).

7  That hearing should have occurred before petitioner was re-detained. "'[T]he root
8  requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a
9  hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v.*
10 *Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971));
11 *see also Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that
12 the Constitution requires some kind of a hearing *before* the State deprives a person of liberty
13 . . . ."). Respondents also concede in their opposition that petitioner "does not appear to be a
14 danger or flight risk . . . ." Doc. 9 at 12. Courts typically require evidence of urgent concerns or
15 an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M.*
16 *R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53,
17 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice
18 and hearing, but only in extraordinary situations where some valid governmental interest is at
19 stake that justifies postponing the hearing until after the event[,]" such as "executive urgency."
20 (internal quotations omitted)). In these circumstances, the Court finds that petitioner is entitled to
21 a pre-deprivation hearing.

22 Respondents argue that this remedy exceeds the permissible bounds of habeas relief,
23 citing *Thuraissigiam* for the proposition that habeas is solely "'a means to secure *release* from
24 unlawful detention,' not a means of 'achiev[ing] an entirely different end,' such as 'obtain[ing]
25 additional administrative review.'" Doc. 9 at 14 (quoting *Thuraissigiam*, 591 U.S. at 107). This
26 argument fails. The quoted statements from *Thuraissigiam* are from a different context—the
27 Court's consideration of whether a jurisdiction-stripping provision violated the Suspension
28 Clause by barring the petitioner's request for a writ of habeas corpus. *See Thuraissigiam*, 591

12

1  U.S. at 115–120.  That provision is not at issue in this case.  As habeas relief is available "to

2  attack future confinement and obtain future releases[,]" *Preiser v. Rodriguez*, 411 U.S. 475, 487

3  (1973), the Court finds that "habeas relief remains available . . . to prevent a further detention

4  without a pre-detention hearing," *Martinez Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025

5  WL 3443146, at *3 (C.D. Cal. Dec. 1, 2025).  *Cf. Morrissey*, 408 U.S. at 484–490 (in a habeas

6  challenge, setting out the procedures that must be followed before revoking parole).

7        Petitioner is therefore likely to succeed on his habeas claim that his detention without a

8  pre-deprivation hearing violates his due process rights.

9        **b. Irreparable Harm**

10       Turning to the second *Winter* factor, "[i]t is well established that the deprivation of

11  constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994

12  (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged

13  deprivation of a constitutional right is involved, most courts hold that no further showing of

14  irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)

15  (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given

16  the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his

17  detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable

18  harm absent a preliminary injunction.

19        **c. Balance of Equities and Public Interest**

20       When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird*

21  *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the

22  government has a strong interest in enforcing the immigration laws, the issue in this case is not

23  whether the government can re-detain petitioner at all, but whether it can re-detain petitioner

24  without a bond hearing pending his removal proceedings.  Respondents argue that they have a

25  strong interest in subjecting petitioner to mandatory detention, but their argument fails to grapple

26  with the fact that they previously released him on parole pending his removal proceedings and

27  that those removal proceedings remain pending.  Faced with a choice "between [minimally costly

28  procedures] and preventable human suffering," the Court concludes "that the balance of hardships

1  tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

### V. Conclusion and Order

Accordingly:

1. Petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED.
2. Respondents are ORDERED to release petitioner immediately.
3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008,

1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

5. This matter is referred to the assigned magistrate judge for further proceedings including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:   December 30, 2025

_____
UNITED STATES DISTRICT JUDGE

15